[L. A. No. 6228. In Bank.—September 23, 1921.]

HOLLY SUGAR CORPORATION (a Corporation), et al., Appellants, v. C. LEONARDT, Respondent.

[1] CONTRACTS — STORAGE OF SUGAR — IMPLIED TERMS.—Where the owner of warehouses entered into a contract with the owner of certain sugar by correspondence in which the former solicited the patronage of the latter and represented that he would be in a position to store a certain quantity of sugar, and probably more, and represented that his warehouse was a reinforced concrete, fireproof building, upon which representation a certain quantity of sugar was stored, and thereafter through further negotiations between the parties additional sugar was shipped for storage, there was, in the absence of notice to the consignor to the contrary, at least an implied agreement on the part of the warehouseman to accept the additional amount for storage under the same terms and conditions as the previous amount.

[2] ID.—DILIGENCE IN RECEIVING GOODS FOR STORAGE—LACK OF LIABILITY FOR DAMAGE BY FIRE.—Where an owner of warehouses, under a contract to store certain sugar, exercises reasonable diligence in prosecuting the work of storing the sugar which is shipped to him in unexpectedly large quantities, and in the process of transferring it from cars to the warehouses places it on an unloading platform which he incloses to protect it from the

---

2. Liability of bailee for loss of, or injury to, goods kept at a place other than that originally intended, note, 12 A. L. R. 1322.

elements, he is not liable for destruction of the sugar by accidental fire while so temporarily stored, it being reasonably necessary to place the sugar on the unloading platform temporarily owing to the congested condition of the warehouses and it being left there no longer than, in the exercise of reasonable care and diligence, was necessary.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

O'Melveny, Stevens & Millikin, George K. Ford and Goodfellow, Eells, Moore & Orrick for Appellants.

Sheldon Borden for Respondent.

SLOANE, J.—This action was brought to recover for the loss by fire of 14,526 bags of sugar which the plaintiff Holly Sugar Company had delivered to the defendant for storage in his concrete fireproof warehouse.

The sugar, in the process of transfer from the cars in which it was delivered to the storage warehouse, had been stacked for several days upon the concrete unloading platform between the warehouse and railroad track. The part of the platform where the sugar was stacked was covered by a wooden roof, and for the further protection of the sugar from the elements a temporary inclosure on the sides and ends was constructed of boards lined with tar paper. While thus temporarily stored the sugar was destroyed by the accidental burning of this platform structure.

The Aetna Insurance Company, Phoenix Insurance Company of Hartford, Orient Insurance Company, and North British & Mercantile Insurance Company had issued policies of insurance to the owner upon the sugar, and, having paid this loss, claimed the right of recovery against defendant by subrogation, and are joined as plaintiffs in the action.

Plaintiffs allege in their complaint two causes of action—one for breach of contract to store the sugar in a fireproof building, and the other for negligence in the care and handling of the sugar.

Judgment was for the defendant. Plaintiffs appeal, and rely upon the alleged breach of contract for fireproof storage for a reversal.

The findings of the trial court covering the issues involved in the appeal are in substance as follows:

That the defendant was not at any time engaged in the business of conducting a warehouse, but that he was the owner of the platform building referred to and certain contiguous warehouses, one of which, designated as No. 1, was entirely of concrete construction and practically fireproof. Another, designated as No. 3, was of concrete excepting the roof, which was of wood. That pursuant to special and several arrangements made during each of the years 1913 and 1914 between defendant and Holly Sugar Company and the American Beet Sugar Company he accepted from them for storage certain shipments of sugar. "That the shipments so accepted during the year 1913 were stored in warehouse No. 1 and of the shipments so accepted in the year 1914, the greater part thereof was stored in warehouse No. 1 and the remainder, excepting the quantity of approximately fourteen thousand bags hereinafter mentioned, was stored in warehouse No. 3, and that in the year 1914 he accepted for storage in said warehouse from the American Beet Sugar Company certain barley seed; that, with said exceptions, the defendant at no time received or solicited goods or other commodities for storage in said warehouses, or either of them, and no other person or persons actually did, at any time, store or deposit for storage with the defendant, goods or commodities to be deposited in the said warehouses, or either of them.

"That on or about August 7, 1914, the defendant and said Holly Sugar Company made an agreement whereby said Holly Sugar Company agreed to deliver unto defendant approximately twenty thousand bags of sugar out of its production during the season of 1914, and defendant agreed to store said sugar in said warehouse No. 1, storage thereon to be charged and paid at the rate of twenty cents per ton per month; that thereafter and prior to the ninth day of November, 1914, said Holly Sugar Company delivered unto defendant, in cars upon the aforesaid spur-track, approximately fifty thousand bags of sugar, which said sugar was unloaded from said cars by the defendant and stored in said warehouses Nos. 1 and 3; that the portion of said deliveries in excess of the twenty thousand bags covered by said arrangement of August 7, 1914, were tendered by Holly

Sugar Company and accepted by the defendant without the making of any supplemental or additional express arrangement applicable thereto; that on or about the first week in November, 1914, said Holly Sugar Company requested defendant to store an additional quantity of sugar estimated at from fifteen thousand to twenty-five thousand bags, to which request defendant agreed; that thereafter and between November 9 and November 25, 1914, said Holly Sugar Company delivered to defendant in railroad cars upon the aforesaid spur-track, additional sugar, amounting to not less than twenty thousand bags; that said additional sugar was delivered faster and in larger quantities than the deliveries previously made and under circumstances and conditions which required the removal of said sugar from the railroad cars with such rapidity that defendant was unable, in the exercise of ordinary care, to pile and store said sugar in said warehouses as fast as the same was removed from said railroad cars; that defendant employed as many men as could be reasonably and conveniently used in the unloading and handling of said sugar and in the course of transferring same from the said railroad cars into said warehouse No. 1, a large quantity of said sugar, to wit, upward of fourteen thousand bags thereof, was temporarily deposited and accumulated on said unloading platform; that Holly Sugar Company had no knowledge or notice prior to the happening of said fire that any of its sugar had been deposited or placed on said unloading platform, nor did it have any knowledge or notice that defendant was experiencing or had experienced any unusual inconvenience or difficulty in receiving or handling any of the sugar theretofore shipped by said Holly Sugar Company, either by reason of the rapidity or rate of said shipments, or for any reason; it is not true that defendant stored said sugar or any part thereof in or upon said platform or in any shed or platform, or that the same was negligently or carelessly placed upon said unloading platform; that on or about November 16th, 1914, on account of the approaching rainy season, defendant, for the purpose of protecting said sugar on said platform against damage from rain or storm, constructed temporary outside walls on the three sides of said unloading platform which had been theretofore uninclosed; that said temporary walls were constructed of wood and lined with tar paper for

the purpose of rendering the same water-tight and protecting said sugar on said platform against the weather until the same could be removed and piled in said warehouse No. 1; that the allegations. of the complaint in this action relating to the construction, character, and purpose of the said unloading platform, which are at variance with this finding, are untrue; it is not true that defendant at all or any of the times stated in said complaint carelessly or negligently failed or neglected or failed or neglected at all to supply the necessary apparatus for the extinguishing of any fire which might attack the said platform, or the said sugar deposited thereon, as hereinbefore found; that said platform was a reasonably safe place for the temporary deposit thereof of said sugar under the circumstances and conditions hereinbefore found, and was not an unsafe place for the temporary deposit of said sugar while the same was being transferred from the railroad cars into the said warehouse as aforesaid; that in so depositing said sugar on said unloading platform the defendant was not negligent or lacking in the exercise of ordinary or reasonable care and diligence for the protection and preservation of the said sugar so deposited on said unloading platform by the defendant.

"That late in the afternoon of November 25, 1914, and while said sugar, to an amount in excess of fourteen thousand bags, was deposited on said unloading platform, and while its removal into said warehouse No. 1 was going on, the same was partly injured and damaged by fire and by water used in the extinguishment of said fire; that said fire was of unknown origin and was not due to or caused by any negligence or want of ordinary or reasonable care on the part of the defendant or to any failure on his part to exercise ordinary or reasonable care and diligence for the protection and preservation of the said sugar; that neither said warehouse No. 1 nor said warehouse No. 3 were damaged by said fire, nor were the contents of said warehouses or either thereof injured or damaged by said fire, with the exception that a small portion of the sugar theretofore deposited in said warehouse No. 1 was damaged by water used in the extinguishment of the said fire; that said last-mentioned damage was not due to or caused by any negligence on the part of the defendant, or any failure on his part to exercise

ordinary or reasonable care and diligence for the protection and preservation of the said sugar.''

The only material points of controversy on this appeal are, first, whether or not the evidence establishes a contract on the part of the defendant to store all the sugar received in a fireproof warehouse; and, second, whether, if such was the contract, the temporary storing of the sugar destroyed upon the loading platform was a breach of that contract.

[1] We are satisfied that the first proposition must be answered in the affirmative. The contract for storage of the 1913 consignments of sugar was expressly entered into between the parties by correspondence in which the defendant solicited the patronage of the Sugar Company and represented that he would be in a position to store at least fifty thousand bags of sugar and probably more. One of the defendant's letters to the Sugar Company contained the following passage: ''I believe you have seen my warehouse and know that it cannot be beaten for sugar storage or for any other purpose as I use only my reinforced warehouse for this purpose and it is absolutely moisture and vermin proof.'' In another letter he refers to it as ''Warehouse No. 1, which is the reinforced concrete, fireproof building.'' Under these express representations the Sugar Company stored about twenty thousand bags of sugar with defendant for the season of 1913.

In the summer of 1914 negotiations were again entered into for the storage of sugar for the approaching season of 1914, in which the Sugar Company proposed to furnish for storage approximately the same quantity of sugar that had been stored the previous year, some twenty thousand bags, and on August 7th defendant's manager addressed the following letter to the Sugar Company:

''Manager Holly Sugar Company,
    ''Huntington Beach, California.
''My dear Mr. Johnson:

''Since your telephone message of a few days ago to the effect that you expected to commence shipping me sugar for storage in my warehouse I have been expecting to hear further from you. I have cleaned out my warehouse No. 1 where I stored sugar last year and where I will do the same this year and have removed the lime and other objectionable material so that the place is absolutely clean in every respect,

and I will also cover your sacks with canvas. I will appreciate it very much if you will kindly advise me if you have as yet received the instructions you stated you expected from the East in reference to making shipments to me. I have everything arranged to receive your sugar and a day or two's notice while not absolutely necessary would be appreciated, especially if you are in position to inform me as to the approximate number of bags which you will ship me every day.

"I assure you I am in position to give you the same satisfactory service I know I rendered you on last year's shipments.                    Very truly yours,

"C. LEONARDT,

"By MERRILL."

In September, 1914, the Sugar Company began delivering sugar for storage pursuant to the terms, expressed and implied, in the foregoing letter. There can be no question that there was at least an implied agreement to accept at least twenty thousand bags of sugar for storage under the same terms and conditions as of the previous year.

Under this arrangement the Sugar Company consigned and delivered for storage between September 1st and the early part of November not only the suggested amount of twenty thousand bags, but some twenty-five or thirty-five thousand bags in excess of this amount. All, or practically all, of this sugar was stored in warehouses Nos. 1 and 3 before the transactions relating to the consignments of sugar that were damaged by fire. Whether or not the storage of part of the sugar in warehouse No. 3 was in violation of the contract is not material on this appeal, as none of the damage complained of resulted from such storage.

These latter deliveries were made under the following circumstances: On or about the first of November the representative of the Sugar Company called up the defendant by telephone and inquired if he could take care of from fifteen to twenty-five thousand additional bags of sugar. Defendant replied that they had already shipped him approximately twice the amount agreed upon and that he could not tell positively whether he could take it or not. But on the following day the Sugar Company was notified that defendant would receive the additional shipments.

Nothing was said and no inquiry was made as to how or where this extra quantity of sugar was to be stored.

We are satisfied, however, that there was implied in this transaction, in the absence of notice to the consignor to the contrary, an agreement for the same fireproof storage covered by the former agreements.

The court has not found explicitly on this point, but as the probative facts found would only justify such an ultimate conclusion, we will treat it as so found.

The remaining question is: Was there a breach of this contract? The answer depends upon whether or not there was a failure on the part of the defendant to exercise reasonable care and diligence in transferring the sugar from the cars in which it was delivered at defendant's unloading platform, into the permanent storage warehouses.

Clearly, the defendant was entitled to a reasonable time and to the use of reasonable and ordinary methods for making such transfer. That the plaintiffs, the Sugar Company and the Insurance Companies, contemplated that there was likely to be some period in which the sugar would be exposed to possible risk upon the platform of defendant's warehouse is indicated by the fact that the policies contained the following clause of insurance: "On Sugar and containers; all while contained in the one-story concrete building known as Leonardt's Warehouse No. 1, and/or while on platforms adjoining, or in railroad cars on tracks within 300 feet thereof, . . . "

It was a question of fact for the court whether or not the defendant used due skill and diligence in the process of handling this sugar in transit from the cars to the warehouse. To repeat the findings on this point it is declared by the court "that said additional sugar was delivered faster and in larger quantities than the deliveries previously made and under circumstances and conditions which required the removal of said sugar from the railroad cars with such rapidity that defendant was unable, in the exercise of ordinary care, to pile and store said sugar in said warehouses as fast as the same was removed from said railroad cars; that defendant employed as many men as could be reasonably and conveniently used in the unloading and handling of said sugar, and in the course of transferring same from the said railroad cars into said warehouse No. 1. . . . That said

platform was a reasonably safe place for the temporary deposit thereon of said sugar under the circumstances and conditions hereinbefore found, and was not an unsafe place for the temporary deposit of said sugar while the same was being transferred from the railroad cars into the said warehouse as aforesaid; that in depositing said sugar on said unloading platform the defendant was not negligent or lacking in the exercise of ordinary or reasonable care and diligence for the protection and preservation of the said sugar so deposited on said unloading platform by the defendant. . . . That said fire was of unknown origin and was not due to or caused by any negligence or want of ordinary or reasonable care on the part of the defendant, or to any failure on his part to exercise ordinary or reasonable care and diligence for the protection and preservation of the said sugar.''

Here again there is a lack of an explicit finding that it was reasonably necessary to store said sugar temporarily upon the platform and that it was left there no longer than in the exercise of reasonable care and diligence was necessary. But from the general facts found there can be no doubt that such was the conclusion intended by the court.

There were several circumstances shown in evidence tending to support such an ultimate finding. The defendant without having previous notice had received twice as much sugar as had been contracted for prior to the arrangement for taking the last extra consignment of upward of twenty thousand bags. In order to make room for this last consignment he had found it necessary to restack much of the sugar already stored. The sugar was delivered in larger and more frequent consignments of carload lots than previously, and as the warehouse became filled and the surplus had to be placed at higher elevations the work of storing was necessarily retarded and hampered.

[2] Under all these circumstances we cannot say as a matter of law that there was lack of reasonable care and diligence in allowing this quantity of sugar to accumulate in the temporary quarters on the platform during the ten or fifteen days of this extra delivery. There is no significance in the fact that some of the sugar first delivered about the 9th of September was still on the platform when the fire occurred on the 25th. When practicable to do so without

subjecting the cars to demurrage charges, the sugar was unloaded directly into the warehouse. It thus resulted that sugar received the day before the fire was safely stored in the warehouse, while sugar received the early part of the month was still stacked under the platform shelter. But it can make no difference in plaintiff's loss or defendant's liability whether the fourteen thousand sacks of sugar damaged were of the first or last deliveries. The question is: Did defendant keep the sugar moving into the warehouse as rapidly as he reasonably could?

The evidence is sufficient to indicate that the defendant was exercising reasonable diligence in prosecuting the work of storing the sugar in view of the congested condition of the warehouse and the unexpected increase in the quantities delivered.

There is one circumstance, however, which is strongly urged by appellant as reflecting against defendant's care and diligence. The evidence discloses, and the court finds, that defendant sent no notice to the Sugar Company that the shipments were coming in faster than they could be taken care of or that sugar was being left upon the unloading platform. On the other hand, the Sugar Company did know that they had sent in quantities of sugar largely in excess of the amount originally stipulated for; that when it had asked for storage of a further lot of fifteen to twenty-five thousand sacks, the defendant had expressed uncertainty as to whether or not he had room for it, and no conditions were made as to how it was to be handled. It was perhaps incumbent upon the Sugar Company to make some inquiry and investigation as to the facilities of the defendant for speedily receiving and storing this large excess of deliveries.

If this was a matter of first impression in this court the conclusion might be different. But as against the findings of the trial court we are not justified in reversing its judgment.

Judgment affirmed.

Shaw, J., Wilbur, J., Shurtleff, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., who was absent.